**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FLORENCE LYNCH and JAY LYNCH, wife and husband,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. CV 07-152-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendant's opposed motion for summary judgment. (Dkt. #63). After reviewing the pleadings and holding oral argument on August 13, 2008, the Court issues the following order.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

On January 19, 2007, Plaintiffs Florence and Jay Lynch brought a complaint against Defendant United States of America ("Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for damages resulting from the failure to maintain a trail in the Muir Woods National Monument ("Muir Woods"). (Dkt. #1).

The Lynches arrived in Muir Woods in the late morning or early afternoon of June 17, 2004. (Defendant's Statement of Facts ("DSOF") ¶102). The weather was clear with no rain. (DSOF ¶104). After visiting the gift shop, the Lynches entered the woods and began to walk down the heavily traveled, paved main trail. (DSOF ¶¶ 106, 25-26).

1  When the Lynches were approximately 530 feet from the Muir Woods' Visitor Center, Florence Lynch ("Plaintiff"), fell down and sustained a fractured wrist and an "aggravation of a prior fracture of the right leg." (DSOF ¶¶ 24-26, Defendant's Responsive Statement of Facts ("DRSOF") ¶261). Apparently the Lynches "were walking down the path talking, and [Plaintiff] stepped down with [her] right foot and [her] ankle rolled and [ ] pitched [her] off balance and [she] came off on [her] left hand, wrist and on [her] knee." (DSOF ¶109). Plaintiff stated that her "leg kind of went out and [her] foot folded underneath." (DSOF ¶111).

Plaintiff fell when she stepped into a depression shaped like a half-moon on the side of the paved main trail in the Muir Woods. (DSOF 150). Plaintiff described the area where she fell as a "hold or depression that's been created by the asphalt being gone," and stated that she stepped inside the "hole." (DSOF ¶¶ 120, 121). The Lynches allege that the depression was "an inch deep" (Complaint, ¶12), and Alan Pond, the National Park Service ("NPS") Maintenance Mechanic Supervisor in charge of maintaining the trails at Muir Woods, described the depression to be 3/4 of an inch to one (1) inch deep. (DSOF ¶¶ 134, 149). At the time of the incident, the depression was clear; there were no leaves, just dirt. (DSOF ¶¶ 122, 123). In addition, there was an edge where the asphalt had eroded away; Plaintiff described the edge as "jagged." (DSOF ¶¶ 125, 126). Plaintiff stated that when she stepped down into the depression, it caused her ankle to "roll out or turn out." (DSOF ¶131). Plaintiff stated that there was nothing in addition to the height differential that caused her to roll her ankle. (DSOF ¶132).

In June 2004, Plaintiff was 48 years old, five feet eight inches tall, and weighed 240 pounds. (DSOF ¶113). Although Plaintiff fatigues more quickly now when she walks and hikes, there is not anything that she can not do now compared to what she could do before her fall at Muir Woods. (DSOF ¶¶ 97, 98).

In 2004, approximately 778,000 people visited the Muir Woods. (DSOF ¶12). There were no Visitor Response Files concerning any complaints filed regarding the subject area where Florence Lynch fell down. (DSOF ¶¶ 32, 33).

1   The Lynches contend that the Government is liable under the FTCA for the
2 injuries that Florence Lynch received when she stepped into the depression located on the
3 paved trail in the Muir Woods.  (Id, p.2).

4 **II.     STANDARD OF REVIEW**

5   Summary judgment is appropriate when the "pleadings, depositions, answers to
6 interrogatories, and admissions on file, together with the affidavits, if any, show that there
7 is no genuine issue as to any material fact and that the moving party is entitled to a
8 judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial
9 burden of establishing the absence of any genuine issue of material fact; the moving party
10 must present the basis for its summary judgment motion and identify those portions of the
11 record that it believes demonstrate the absence of a genuine issue of material fact.
12 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070,
13 1076 (9th Cir. 2001).

14   A material fact is one that might affect the outcome of the case under governing
15 law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In addition, in order to
16 preclude summary judgment, a dispute about a material fact must also be "genuine," such
17 that a reasonable jury could find in favor of the non-moving party.  Id.; Anheuser -Busch,
18 Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995).

19   In determining whether the moving party has met its burden, the Court views the
20 evidence in the light most favorable to the non-moving party.  Allen v. City of Los
21 Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).  The Court may not make credibility
22 determinations or weigh conflicting evidence.  Musick v. Burke, 913 F.2d 1390, 1394
23 (9th Cir. 1990).  Further, the Court must draw all reasonable inferences in favor of the
24 non-moving party.  Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

25   If the moving party meets its burden with a properly supported motion for
26 summary judgment, then the burden shifts to the non-moving party to present specific
27 facts that show there is a genuine issue for trail.  Fed.R.Civ.P. 56(e); Matsushia Elec.
28 Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  The non-moving party may not

1  rest on bare allegations or denials in his pleading, but must set forth specific facts, by
2  affidavit or as otherwise provided by Rule 56, demonstrating a genuine issue for trail.
3  Fed.R.Civ.P. 56(e); Anderson, 447 U.S. at 248-49.  Conclusory allegations, unsupported
4  by factual material, are insufficient to defeat a motion for summary judgment.  Taylor v.
5  List, 880 F.2d 1040, 1045 (9th Cir. 1989).

6       In sum, the question on motion for summary judgment is whether the evidence
7  "presents a sufficient disagreement to require submission to a jury or whether it is so one-
8  sided that one party must prevail as a matter of law."  Anderson, 447 U.S. at 521-52.  A
9  district court is not required to probe the record in search of a genuine issue of triable fact.
10 Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The non-moving party has the
11 burden of identifying with reasonable particularity the evidence that precludes summary
12 judgment.  Id.; see Carmen v. San Francisco Unified School District, 237 F.3d 1026,
13 1028-29 (9th Cir. 2001) (even if there is evidence in the record that creates a genuine
14 issue of material fact, a district court may grant summary judgment if the opposing
15 party's papers do not include or conveniently refer to that evidence).  The mere existence
16 of a scintilla of evidence supporting the non-movant's petition is insufficient; there must
17 be evidence from which a trier of fact could reasonably find for the non-movant.  Id. at
18 252.

19 **III.  DISCUSSION**

20      "The FTCA waives the sovereign immunity of the United States for claims based
21 on negligent or wrongful acts of United States employees."  Yanez v. United States, 63
22 F.3d 870, 872 (9th Cir. 1995).  The Lynches assert that the Government is liable under the
23 FTCA for (1) negligent maintenance of the paved trail on which Florence Lynch fell, (2)
24 failure to warn of the defect in question, and (3) negligent training and supervision of
25 Muir Woods employees; they allege that the incident in question occurred in California.
26 (Complaint ¶¶ 1, 9, 14, 17).  As such, the Court must apply California substantive law.
27 28 U.S.C. § 1346; Yanez, 63 F.3d at 872 ("Under the FTCA, the government's liability is
28 determined in the same manner and to the same extent as a private individual in like

- 4 -

1 circumstances. Because plaintiff's accident occurred in California, this [FTCA] action is
2 governed by California law.") (internal quotations and citations omitted).

3 The instant action sounds in negligence. The Lynches must establish that the
4 Government owed them a duty, that the Government breached that duty, and that the
5 breach was the proximate cause of Florence Lynch's injuries. Sharon P. v. Arman, Ltd.,
6 21 Cal. 4th 1181, 1188 (1999) (overruled in part on other grounds). Existence of a duty is
7 a question of law that is "particularly amenable to resolution by summary judgment."
8 Parsons v. Crown Disposal Co., 15 Cal. 4th 456, 464-65 (1997).

9 **A.    Duty to Maintain & the "Trivial Defect" Doctrine**

10 "The duty of care imposed on a property owner, even one with actual notice, does
11 not require the repair of minor defects." Ursino v. Big Boy Restaurants, 192 Cal.App.3d
12 394, 398 (App. 1987). It is well known that "persons who maintain walkways, whether
13 public or private, are not required to maintain them in absolutely perfect condition." Id.
14 California courts employ a "trivial defect" doctrine, such that the Court must determine
15 whether the defect in question was trivial as a matter of law. Id. at 398 ("the 'trivial
16 defect' defense is determined by a court as a matter of law"); Caloroso v. Hathaway, 122
17 Cal.App.4th 922, 929 (App. 2004) ("Where reasonable minds can reach only one
18 conclusions – that there was no substantial risk of injury – the [trivial defect] issue is a
19 question of law, properly resolved by way of summary judgment."); Gentekos v. City &
20 County of San Francisco, 163 Cal.App.2d 691, 696 (App. 1958) ("Whether a particular
21 condition is a dangerous or defective one is generally a question of fact. Of course the
22 condition must be one that is truly dangerous or defective. If it is trivial then it is neither
23 dangerous nor defective, and, as a matter of law, the city is not liable.").

24 A trivial defect is one that does not pose a substantial risk of injury. Id.; see also
25 Cal. Gov. Code § 830.2; Gentekos, 163 Cal.App.2d at 696 ("A condition is a dangerous
26 or defective one if the hazard is one from which injury may reasonably be anticipated to
27 those properly using the area for the purpose intended."). Thus, the question before the
28 Court on summary judgment is whether a reasonable fact-finder could find that the one

1 inch depression in the asphalt on the main trail in Muir Woods posed a substantial risk of
2 injury or whether the Court must find as a matter of law that the defect was trivial.

3       Analogous to this case are those that address the trivial defect doctrine in the
4 context of public walkways and sidewalks.  In analyzing defective public walkways,
5 California courts have held that height differentials of up to approximately one and one-
6 half (1½) inches constitute defects that are minor and trivial as a matter of law.  <u>Fielder v.</u>
7 <u>City of Glendale</u>, 71 Cal.App.3d 719, 724 n. 4 (citing cases finding height differentials up
8 to one and one-half inches trivial as a matter of law); <u>cf. id.</u> at 726 ("[W]hen the size of
9 the depression begins to stretch beyond one inch the courts have been reluctant to find
10 that the defect is not dangerous as a matter of law.").  Nonetheless, California courts have
11 rejected a strict "tape measure" test and look instead at the size of the depression, break,
12 or nonalignment, as well as aggravating factors such as lighting, debris, and history of
13 other similar injuries.  <u>Ursino</u>, 192 Cal.App.3d at 397.  Indeed, "[t]he defect of a slightly
14 depressed sidewalk only has been held to be not dangerous, as a matter of law, in those
15 cases where no aggravating circumstances or facts were present."  <u>Fielder</u>, 71 Cal.App.3d
16 at 726.  Accordingly, "[w]hile size may be one of the most relevant factors to the decision
17 it is not always the sole criteria.  Instead, the court should determine whether there existed
18 any circumstances surrounding the accident which might have rendered the defect more
19 dangerous than its mere abstract depth would indicate." <u>Id.</u> at 734.

20       In the instant case, the Lynches identified the area where Florence Lynch fell as a
21 half-moon depression that was created when asphalt on the Muir Woods trail eroded.
22 There is no dispute that the half-moon depression is a level area adjacent to the rest of the
23 trail's intact asphalt.  Moreover, although the Lynches assert in their response to the
24 Government's motion for summary judgment that the depression was "slightly more than
25 one inch" deep, the Lynches described the subject area in their Complaint as "an inch
26 deep."  The Lynches do not contend that the depression was equal to or greater than one
27 and one-half inches.  Therefore, for purposes of this motion, the Court will assume that
28

1  the depression in question was an approximately one-inch deep, level depression, give or
2  take a few eights of an inch.
3        The Court finds that the defect at issue here, an approximately one-inch deep
4  depression in the trail's asphalt, falls within the range of height differentials found trivial
5  as a matter of law by California courts.  Although the depression in question may have
6  been slightly more than one inch deep, defects up to one and one-half inches have been
7  found by California courts to be trivial defects as a matter of law for which no liability
8  exists.  See Fielder, 71 Cal.App.3d at 726 (three-fourths inch depression on which
9  plaintiff tripped was not dangerous as matter of law); Balmer v. City of Beverly Hills, 22
10 Cal.App.2d 529, 531 (one inch defect held trivial as a matter of law); Meyer v. City of
11 San Rafael, 22 Cal.App.2d 46 (1937) (differential up to one and three-eighths of an inch
12 found insufficient as a matter of law) Nicholson v. City of Los Angeles, 5 Cal.2d 361
13 (1936) (one and one-half inch defect insufficient as a matter of law).
14       The Court must also determine whether there were any aggravating circumstances
15 or factors present "which might have rendered the defect more dangerous than its mere
16 abstract depth would indicate."  Fielder, 71 Cal.App.3d at 734.  It remains undisputed that
17 on the day of the incident the weather was clear with no rain, the incident occurred in the
18 daylight hours, and that there was nothing in the subject area except for some dirt.
19 Indeed, the only possible aggravating circumstance raised by Plaintiff is her description
20 of the edge of the depression as "jagged."  However, Plaintiff did not testify that she
21 tripped on the edge of the depression, but that she merely saw that the edge of the
22 depression was "jagged" when she sat up after her fall.  Plaintiff specifically testified that
23 she stepped down inside the depression and that there was nothing other than the height
24 differential that caused her ankle to roll.  As such, Plaintiff presents no evidence that the
25 alleged "jagged edge" of the depression was the proximate cause of her injury.  The
26 "jagged edge" in this case is not an aggravating factor; Plaintiff presents no other
27 aggravating factor or circumstance.
28

- 7 -

1    Plaintiff cites the Court to Caloroso v. Hathaway, 122 Cal.App.4th 922 (App.
2 2004) and Kasparian v. AvalonBay Communities, 156 Cal.App.4th 11 (App. 2007), and
3 argues that those cases support her position that the Court should not find that the subject
4 depression was a trivial defect. However, those cases do not support that contention. In
5 Kasparian, the court found that summary judgment on the issue of whether the defect was
6 trivial was not appropriate because the parties did not stipulate to facts concerning the
7 defect, including the height differential and other aggravating factors and circumstances.
8 Here, the parties agree that the height differential is approximately an inch and that there
9 is possibly only one aggravating factor (even though defense counsel stated at oral
10 argument that there were no aggravating factors or circumstances). In addition, Caloroso
11 merely confirms that the trivial defect doctrine is alive and well, finding that a half-inch
12 height differential was trivial as a matter of law. Caloroso reiterated that a minor height
13 differential may be enough to deem a defect trivial as a matter of law, "unless there is
14 disputed evidence that other conditions made the walkway dangerous." 122 Cal.App.4th
15 at 927. There is no disputed evidence here; there are no other conditions that made the
16 subject depression dangerous, i.e., no aggravating factors or circumstances.

17    Finally, as stated above, the standard of care imposed on private property owners,
18 even ones with actual notice, does not require the repair of minor or trivial defects.
19 Ursino, 192 Cal.App.3d at 398. Thus, contrary to Plaintiff's contention, the
20 Government's knowledge or lack thereof of the depression has no bearing on this motion
21 for summary judgment. Further, the fact that Ranger MacDonald said, "[w]ell, you know
22 the pathways here," in response to being asked how Plaintiff fell (PSOF § 226), as well as
23 the fact that Muir Woods employee Jeff Jewhurst marked the subject depression with
24 white paint to indicate that the area needed maintenance (DSOF ¶¶ 245-46), does not
25 somehow indicate that the depression posed a substantial risk of injury. Those facts do
26 not constitute aggravating factors or circumstances to indicate that the depression was
27 anything other than a trivial defect; they do not establish that there is a genuine issue of
28 material fact to support Plaintiff's contention that the depression posed a substantial risk

1  of injury.  Given that the size of the depression at issue here was only approximately one
2  inch and that there were no aggravating factors or circumstances, the Court concludes that
3  reasonable minds can reach only one conclusion – that there was no substantial risk of
4  injury, and thus the defect was trivial as a matter of law.

### B. Failure to Warn

The FTCA is a limited waiver of the United States' sovereign immunity; it is subject to a number of exceptions that are to be "strictly observed." Lehman v. Nakshian, 453 U.S. 156, 160 (1981).  One such exception, at issue here, is the "discretionary function exception," 28 U.S.C. § 2680(a), which provides that the United States may not be held liable for conduct "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." "[T]he United States bears the ultimate burden of proving the applicability of the discretionary function exception." Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992).

To determine whether the discretionary function exception applies, courts employ a two-part test. See United States v. Gaubert, 499 U.S. 315 (1991); Berkovitz v. United States, 486 U.S. 531 (1988).  First, the Court must determine whether the challenged conduct involved a matter of judgment or choice. Berkovitz, 486 U.S. at 536; Gaubert, 299 U.S. at 322 (stating that the discretionary function exception does not apply if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and "the employee has no rightful option but to adhere to the directive").  Second, if the challenged conduct involves an element of judgment or choice, then the Court must "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536.  "[T]he discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." Id. at 537.

In this case, the Lynches argue that the Government's failure to warn about the defect is not protected by the discretionary function exception to the FTCA. (Complaint,

- 9 -

1  ¶16). The Government offers testimony by Richard Powell, Chief of the Risk
2  Management Division of the National Park Service, that NPS Superintendents have
3  discretion regarding visitor safety and signage. (DSOF 59). In addition, Mr. Powell
4  testified that the Loss Control Management Guideline NPS-50 does not prescribe any
5  specific means of signage. (DSOF 60). Further, the 2001 NPS Management Policies
6  Chapter 8, Section 8.2.5.1, Visitor Safety, states that management policies do not impose
7  park-specific visitor safety prescriptions, and the 2001 NPS Management Policies
8  Chapter 9, Section 9.3.1.1 states that signs will be kept to a minimum number so as to
9  minimally intrude on natural and historic settings. (DSOF 61). Plaintiffs do not offer any
10 evidence to indicate that the Muir Woods employees operated under a policy mandating
11 the warning of certain safety hazards or that the failure to warn of the defect in this case
12 did not involve a matter of judgment or choice. (DSOF ¶¶ 63, 71-87). Thus, the Court
13 finds that the challenged conduct involved a matter of judgment or choice.
14       As such, the Court must look at whether the conduct is of the type for which the
15 discretionary function exception was designed to shield. In Valdez v. United States, the
16 Ninth Circuit held that a National Park Service employee's decision regarding whether to
17 post warning signs near potential park hazards falls within the discretionary function
18 exception to the FTCA. 56 F.3d 1177, 1180 (9th Cir. 1995) ("[B]ecause the [National
19 Park Service] cannot apprize the public of every potential danger posed by every feature
20 of the Park, a degree of judgment is required in order to determine which hazards require
21 an explicit warning and which hazards speak for themselves."); see also Fahl v. United
22 States, 792 F.Supp. 80 (D.Ariz. 1992) (concluding that the failure to post warning signs
23 or guardrails at the Grand Canyon was a permissible exercise of judgment protected
24 under discretionary function exception). However, the Ninth Circuit also reiterated that
25 "where the challenged governmental activity involves safety considerations under an
26 established policy, rather than the balancing of competing policy considerations, the
27 rationale for the exception falls away and the U.S. will be responsible for the negligence
28

- 10 -

of its employees." ARA Leisure Services v. United States, 831 F.2d 193, 195 (9th Cir. 1987). Nonetheless, as in Valdez, such is not the case here.

Under 2001 NPS Policy Chapter 9, Section 9.3.1.1, signs are to be held to the minimum number, size, and wording required to serve their intended functions, so as to minimally intrude on the natural and historic settings. (DSOF ¶62). Muir Woods employees have the discretion and must use their judgment to determine which potential safety hazards in the Park require an explicit warning; there is not established policy regarding safety considerations in this case. Thus, as in Valdez, "the challenged conduct [i.e., not warning about the trivial defect at issue in this case] clearly implicates a choice between the competing policy considerations of maximizing access to and preservation of national resources versus the need to minimize potential safety hazards." 56 F.3d at 1180. The Court finds that the discretionary function exception was designed to shield the Government from liability for discretionary decisions regarding whether or not to warn of the potential safety hazard of trivial defects.

Plaintiff cites the Court to Summers v. United States, 905 F.2d 1212 (9th Cir. 1990), for the proposition that "the failure to warn about existing dangerous conditions known to Government employees simply is not the type of 'discretion' that the FTCA intended to protect." (Dkt. #70, pp. 12-13). In Summers, the Ninth Circuit held that NPS's failure to identify and warn of the danger of stepping on hot coals did not involve the exercise of judgment grounded in social, economic or political policy. Summers, 905 F.2d at 1215-17. However, as the Ninth Circuit recently stated in Terbush v. United States, the decision in Summers "appears out of step with [the Ninth Circuit's] other NPS failure to warn cases"; "[a]s in Childers, Valdez and Blackburn, [the] process of identifying and responding to hazards in the wild implicates the NPS's broader policy mandates to balance access with conservation and safety." 516 F.3d 1125, 1137. In addition, Plaintiff cites the Court to Faber v. United States, 56 F.3d 1122 (9th Cir. 1995), in which the Forest Service had a plan listing mandatory measures that were not followed. However, as in Terbush, although Plaintiff contends that Management Guideline NPS-50

1 mandates particular actions by the Government, NPS-50 does not contain any mandatory
2 requirements. See Blackburn v. United States, 100 F.3d 1426, 1433 (9th Cir. 1996)
3 ("These guidelines and regulations, while setting out general goals and policies,
4 necessarily involve an element of discretion in determining the precise manner in which
5 to meet these goals and policies."). Here, the guidelines under which the Government
6 operated at the time of the accident (NPS-50 and 2001 NPS Policy Chapter 9, Section
7 9.3.1.1) did not impose mandatory duties of care, but instead created "broad policy goals
8 attainable only by the exercise of discretionary decisions."[1] Valdez, 56 F.3d at 1180.

9 In addition to their claim for failure to warn, the Lynches' allege that the
10 Government negligently trained and supervised the personnel who managed Muir Woods.
11 However, the Ninth Circuit has consistently held that decisions related to the training and
12 supervision of employees involve policy judgment that "fall squarely within the
13 discretionary function exception." Nurse v. United States, 226 F.3d 996, 1101-02 (9th
14 Cir. 2000); Vickers v. United States, 228 F.3d 944, 950 (9th Cir. 2000). As such, the
15 Lynches' FTCA claim based on the Government's allegedly negligent training and
16 supervision of the Muir Woods personnel is also barred by the discretionary function
17 exception. Further, Plaintiffs' counsel did not respond to the Government's motion for
18 summary judgment on this issue and stated on the record at oral argument that Plaintiffs
19 waived their claim for failure to adequately train and supervise. This issue is moot.

20 **Accordingly,**

---

[1] Plaintiff also cites the Court to Bolt v. United States, in which the Ninth Circuit held that "'maintenance work is not the kind of regulatory activity' to which the Supreme Court envisioned the discretionary function exception applying". 509 F.3d 1028, 1034 (2007) (quoting ARA Leisure Servs., 831 F.3d at 195). However, Bolt is inapplicable. Bolt addresses the application of the discretionary function exception to a claim for negligent maintenance, not failure to warn. As the Ninth Circuit clearly indicates in Terbush, negligent maintenance and failure to warn are two separate issues, indicating that the discretionary function exception may at the very least apply to claims for failure to warn. 516 F.3d at 1132-40. Here, the Government does not assert the discretionary function exception as a defense to Plaintiffs' claim for negligent maintenance; to that the Government asserts the trivial defect doctrine.

1  **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment
2  (Dkt. # 63) is GRANTED.
3  **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter
4  judgement accordingly.
5  DATED this 5th day of September, 2008.

_____
Mary H. Murguia
United States District Judge